IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VINMAR OVERSEAS, LTD. and VITOL INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-4311 Consolidated with Civ. A. No. H-11-4629 |
| OCEANCONNECT, LLC, | § § | |
| Defendant, | § § | |
| and | § § | |
| CLEAN GREEN FUELS, LLC, RODNEY R. HAILEY, ABSOLUTE FUELS, LLC, JEFFREY DAVID GUNSELMAN, GREEN DIESEL, LLC, UNITED STATES OF AMERICA, by and through the U.S. ENVIRONMENTAL PROTECTION AGENCY, and LISA P. JACKSON, in her official capacity as Administrator of the U.S. Environmental Protection Agency, | § § § § § § § § § § § § | |
| Third-Party Defendants. | § | |

**MEMORANDUM AND ORDER**

**I.     Background**

This consolidated action arises from the sale of allegedly invalid Renewable Identification Numbers ("RINs"). The plaintiff in Civil Action No. H-11-4311 is Vinmar Overseas, Ltd; the plaintiff in Civil Action No. H-11-4629 is Vitol Inc. The defendant in both lawsuits is

OceanConnect, LLC.  The two lawsuits have been consolidated into No. 11-4311.[1]  (*Vinmar*, Docket Entry No. 15; *Vitol*, Docket Entry No. 21).

### A. Factual Background: The Regulations Creating RINs

"In 2005 Congress amended section 211 of the Clean Air Act that authorizes [the U.S. Environmental Protection Agency ("EPA")] to regulate fuel and fuel additives to establish a renewable fuel program."  *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145, 147 (D.C. Cir. 2010) (citing Pub. L. No. 109–58, § 1501, 119 Stat. 594 (codified at 42 U.S.C. § 7545(o))).  The amended act ordered that "minimum volumes of renewable fuel [] be used" beginning in 2006, with increased volumes annually through 2012.  *Id.*  "Obligated parties—refiners, importers, and certain blenders of gasoline—had to show that they had introduced a required volume of renewable fuel into the domestic gasoline pool each year."  *Id.* at 148.  The parties refer to this requirement as the "annual Renewable Volume Obligations," or "RVOs."  (*Vitol*, Docket Entry No. 1, Ex. 1-2, ¶ 9).

The EPA promulgated regulations in 2007 to establish this renewable-fuel program.  "To facilitate [the obligated parties'] compliance [with the program], EPA adopted a system of Renewable Identification Numbers ('RINs') for reporting purposes."  *Nat'l Petrochemical*, 630 F.3d at 148 (citing *Regulation of Fuels and Fuel Additives: Renewable Fuel Standard Program*, 72 Fed. Reg. 23,900, 23,908–10 (May 1, 2007)).  "A RIN is a 38-character numeric code that is generated by the producer or importer of renewable fuel that represents a gallon of renewable fuel produced or imported in the United States."  (*Vitol*, Docket Entry No. 1, Ex. 1-2, ¶ 8).  "Thus, obligated parties would demonstrate their compliance with the annual volume standard"—the RVOs—"by acquiring RINs for each gallon of renewable fuel, which would be assigned to batches of renewable fuel

---

[1] Filings in the *Vinmar* action—No. 11-4311—are referred to as "(*Vinmar*, Docket Entry No. X)."  Filings in the *Vitol* action—No. 11-4629—are referred to as "(*Vitol*, Docket Entry No. X)."

produced [in] or imported into the United States, with different fuels carrying different values based on the energy content relative to ethanol." *Nat'l Petrochemical*, 630 F.3d at 148 (citing 72 Fed. Reg. at 23,909).

"An active secondary market exists for the purchase and sale of RINs" that obligated parties use to meet their RVOs. (*Vitol*, Docket Entry No. 1, Ex. 1-2, ¶ 12). EPA regulations prohibit certain "RIN generation and transfer violations." 40 C.F.R. § 80.1460(b). No person may "[g]enerate a RIN for a fuel that is not a renewable fuel, or for which the applicable renewable fuel volume was not produced." *Id.* § 80.1460(b)(1). Nor may any person "[c]reate or transfer to any person a RIN that is invalid under § 80.1431," which defines an invalid RIN. *Id.* § 80.1460(b)(2). "Invalid RINs cannot be used to satisfy a party's annual fuel obligation, even if the party acquired the RIN with a good faith belief that it was valid." *Lansing Trade Grp., LLC v. OceanConnect, LLC*, No. 12-2090-JTM, 2012 WL 2449514, at *1 (D. Kan. June 26, 2012).; *accord* 40 C.F.R. § 80.1431(b)(2).

This consolidated action arises from RINs that OceanConnect bought and sold in the secondary market. The EPA has determined that these RINS were fraudulently generated and invalid. A number of cases are pending in state and federal courts around the country rising from the sale of RINs that the EPA has found invalid. (*See Vinmar*, Docket Entry No. 56, at 25).

**B.** *Vinmar*

In November 2011, Vinmar sued OceanConnect in the 281st Judicial District Court of Harris County, Texas. (*Vinmar*, Docket Entry No. 1, Ex. 1-2). According to the original petition, Vinmar purchased over 4.1 million RINs from OceanConnect and resold many of these RINs to other companies. Vinmar later learned that the RINs were fraudulently created and thus invalid. (*Id.*, ¶ 7).

Vinmar asserted causes of action for breach of contract and breach of warranties under Texas law, or, alternatively, for rescission of its contract with OceanConnect.

OceanConnect timely removed to this court on the basis of federal-diversity jurisdiction. (*Vinmar*, Docket Entry No. 1). Vinmar does not challenge federal jurisdiction. Vinmar has since amended to allege a single cause of action for breach of contract. (*See Vinmar*, Docket Entry No. 52).

### C. *Vitol*

In December 2011, Vitol sued OceanConnect in the 157th Judicial District Court of Harris County, Texas. (*Vitol*, Docket Entry No. 1, Ex. 1-2). According to the original petition, Vitol purchased 3.5 million RINs from OceanConnect and resold them to other companies. (*Id.*, ¶¶ 13, 14). Vitol later learned that nearly 3 million of the RINs, generated by a company called Clean Green Fuels LLC, "were fraudulently created and thus invalid, unusable, and worthless." (*Id.*, ¶ 16). In November 2011, the EPA notified the industry that RINs generated by Clean Green Fuels were fraudulent and invalid. (*Id.*, ¶ 20). Vitol asserted causes of action for breach of contract and breach of warranties under Texas law.

OceanConnect timely removed to this court on the basis of federal-question jurisdiction. (*Vitol*, Docket Entry No. 1). According to OceanConnect, the "only question" in this case is the validity of the RINs and, accordingly, federal law provides the basis for "the *sole* legal question raised by Vitol's claims." (*Id.*, ¶ 3). OceanConnect also has moved to dismiss, to stay the proceedings, or for a more definite statement. (*Vitol*, Docket Entry No. 2). Vitol has responded and OceanConnect has replied. (*Vitol*, Docket Entry Nos. 15, 16). More recently, Vitol has moved to remand. (*Vitol*, Docket Entry No. 12). Vitol argues that its pleading does not raise a federal question

and that its claims do not require resolution of a substantial federal question. (*See generally id.*).
OceanConnect has responded, Vitol has replied, and OceanConnect has surreplied. (*Vitol*, Docket
Entry Nos. 17, 18, 19). This court held a hearing at which the parties presented oral argument on the
motions. (*Vinmar*, Docket Entry No. 50).

### D. The Third-Party Complaint

In May 2012, OceanConnect filed a third-party complaint, asserting numerous claims against
Clean Green Fuels, LLC; Rodney R. Hailey, who is affiliated with Clean Green Fuels; Absolute
Fuels, LLC; Jeffrey David Gunselman, who is affiliated with Absolute Fuels; Green Diesel, LLC; and
the United States, by and through the EPA and Lisa Jackson, in her official capacity as Administrator
of the EPA. (*Vinmar*, Docket Entry No. 34). The claims against Clean Green Fuels, Hailey,
Absolute Fuels, Gunselman, and Green Diesel relate to the allegedly fraudulent conduct that led to
OceanConnect's purchase and resale of RINs that the EPA determined were invalid.

OceanConnect bases its third-party claim against the United States on 42 U.S.C. § 7604(a)(1),
a citizen-suit provision of the Clean Air Act ("CAA"). (*Id.*, ¶¶ 215–22). OceanConnect argues that
this court "has jurisdiction over OceanConnect's claims against the EPA pursuant to 28 U.S.C.
§ 1331 because the primary legal issues to be decided in connection with this action relate to the
federal government's administration of the Renewable Fuel Program[.]" (*See id.*, ¶ 11).
OceanConnect's specific allegations against the EPA are as follows:

- "[T]he United States has violated emissions standards or limitations as set forth in the Renewable Fuel Standard ('RFS')." (*Id.*, ¶ 216).

- "The United States, through the EPA, caused these violations by: (1) wrongfully registering certain companies as renewable fuels producers without confirming that such companies actually had facilities in existence to produce renewable fuels; and (2) once it became evident that these companies did not have such facilities in place, the United States wrongfully failed to

        advise the RINs market, and also failed to suspend or revoke the registration of these companies to stop them from continuing to trade RINs." (*Id.*, ¶ 219).

•         Through these two actions, the United States "caus[ed] affected companies to transfer apparently invalid RINs in the RINs marketplace, which has had the effect of allowing excessive greenhouse emissions to enter the atmosphere in violation of federal law and regulations." (*Id.*, ¶ 217).

OceanConnect alleges that the United States violated emissions standards by negligently allowing fraudulent companies to enter the RINs marketplace, which in turn "has had the effect of allowing excessive greenhouse emissions to enter the atmosphere in violation of federal law and regulations." (*Id.*, ¶ 217). OceanConnect asks this court to impose "appropriate civil penalties for each emission standard and/or limitation violation with respect to the estimated 120 million RINs at issue," (*id.*, at 36), which OceanConnect alleges is in the millions of dollars, (*id.*, ¶ 222).

The United States has moved to dismiss OceanConnect's third-party claim against it. (*Vinmar*, Docket Entry No. 43). The primary argument is that § 7604(a)(1) does not authorize suits against the EPA for claims alleging maladministration of the Act. OceanConnect has responded, and the United States has replied. (*Vinmar*, Docket Entry Nos. 46, 49). This court heard oral argument on the motion to dismiss. (*Vinmar*, Docket Entry No. 50).

After the briefing on the motion to dismiss the third-party complaint was complete and this court had heard oral argument, OceanConnect filed an opposed motion for leave to file an amended third-party complaint. (*Vinmar*, Docket Entry No. 58). In addition to the § 7604(a)(1) claim previously asserted, the proposed amended complaint includes causes of action for violating the Texas Clean Air Act, TEX. HEALTH & SAFETY CODE § 382.085, and for negligence under Texas law, pursuant to the Federal Tort Claims Act. (*Vinmar*, Docket Entry No. 58, Ex. 2, ¶¶ 226–33). Because

6

the time for the United States to respond has not expired, this motion is not ready for decision. This memorandum and order addresses OceanConnect's third-party claim under § 7604(a)(1).

Based on a careful review of the pleadings; the motions, responses, and replies; the parties' submissions; and the applicable law, this court:

1. grants the motion to dismiss the third-party claim against the United States, (*Vinmar*, Docket Entry No. 43);

2. reserves ruling on OceanConnect's motion for leave to file an amended third-party complaint, (*Vinmar*, Docket Entry No. 58);

3. grants Vitol's motion to remand, (*Vitol*, Docket Entry No. 12); and

4. denies as moot OceanConnect's motion to dismiss, to stay the proceedings, or for a more definite statement, (*Vitol*, Docket Entry No. 2).

The *Vitol* action, No. 11-4629, is severed and remanded to the 157th Judicial District Court of Harris County, Texas. The *Vinmar* action, No. 11-4311, remains pending in this court.

The reasons for these rulings are set out in detail below.

## II. *Vinmar*: The Motion to Dismiss The Third-Party Claim Against the United States for Lack of Subject-Matter Jurisdiction

### A. The Applicable Legal Standards

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (internal quotation marks omitted). There are two types of 12(b)(1) challenges to subject-matter jurisdiction: facial attacks and factual attacks. *E.g.*, *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012); *Russell v. City of Houston*, 808 F. Supp. 2d 969, 972 (S.D. Tex. 2011) (citing *Paterson v.*

*Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges the court's jurisdiction based solely on the pleadings." *Russell*, 808 F. Supp. 2d at 972 (citing *Paterson*, 644 F.2d at 523). The pleading's allegations are presumed to be true, and "[i]f those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (citing *Paterson*, 644 F.2d at 523). "A factual attack on the subject matter jurisdiction of the court, however, challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981); *accord, e.g.*, *Terenkian v. Republic of Iraq*, — F.3d —, 2012 WL 2877654, at *5 (9th Cir. 2012).

The United States argues that the third-party complaint fails to allege to a cause of action under § 7604(a)(1) that provides subject-matter jurisdiction. The Fifth Circuit has held that:

> [i]n circumstances where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56.

*Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004) (internal quotation marks and alteration omitted). This court analyzes the motion to dismiss under Rule 12(b)(6), one of the bases for dismissal raised in the motion and addressed in the response.

A complaint may be dismissed under Rule 12(b)(6) when the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which

8

requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The issue presented by the motion to dismiss is not the sufficiency of the factual allegations under Rule 12(b)(6) as interpreted by *Twombly* and *Iqbal*. Rather, the argument is whether, as a matter of law, the claim OceanConnect asserts against the United States is cognizable at all.

When a plaintiff's complaint fails to state a claim, a district court generally should provide the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable[.]"); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). "Denial of leave to amend may be warranted for . . . futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).

### B. The Parties' Arguments

The United States argues that OceanConnect's third-party claim challenges the EPA's alleged maladministration of the RINs program, and that such a claim is not cognizable under § 7604(a)(1), the CAA citizen-suit provision under which OceanConnect has sued. At oral argument, OceanConnect disputed this characterization of its challenge. According to OceanConnect, its claim challenged the EPA's "*ultra vires*" actions in allowing the invalid RINs to be traded for an extended period after the EPA had determined they were invalid and fraudulently issued, while the Department

of Justice investigated and brought criminal charges against those involved in generating the RINs, thus allowing the CAA's emission standards to be violated because these companies were using invalid RINs. (*See Vinmar*, Docket Entry No. 56, at 5–6, 9).

OceanConnect's argument in its response to the motion to dismiss is consistent with its position at oral argument. "OceanConnect is not challenging the EPA's acts or omissions as a regulator in this citizen-suit provision, but is seeking the imposition of civil penalties against the EPA for its violations, past and present, of CAA emission standards and limitations." (Docket Entry No. 46, at 1). According to OceanConnect, the EPA committed these violations through its "complicity in the perpetration of a fraud upon transferees and the public in general by allowing these companies"—Clean Green Fuels, Absolute Fuels, and Green Diesel, all companies without manufacturing facilities—(1) to register as authorized producers of renewable fuel; (2) to generate fraudulent RINs; (3) to fail to disclose to the public that these companies' RINs were fraudulent despite the EPA's knowledge of their fraudulent character; (4) to allow these fraudulent RINs to be transferred in the open market; and therefore, (5) through these acts and omissions, to "allow[] excessive greenhouse emissions to enter the atmosphere in violation of federal law and regulations." (*Id.*, at 13). OceanConnect argues that "[t]he EPA made a conscious decision not to apprise the RINs market of the bogus producers registered by EPA for more than one year after learning of the RINs fraud, thereby becoming complicit in perpetrating the transfer of invalid RINs when EPA possessed the knowledge and power to stop such transfers." (*Id.*). OceanConnect recognizes that the Department of Justice investigated and successfully prosecuted at least some of those persons responsible for generating the invalid RINs, but it argues that the "EPA's choice to pursue criminal investigation at the peril of the RINs market does not excuse its violations of the CAA's emissions

standards and limitations." (*Id*.). The third-party complaint alleges the facts OceanConnect relies on to frame its argument. (*See Vinmar*, Docket Entry No. 34, ¶¶ 35–47, 61–63, 77–82).

At oral argument, the United States responded that, no matter how OceanConnect labels or describes the third-party claim, it "is a challenge to the agency's administration of the Clean Air Act." (*Vinmar*, Docket Entry No. 56, at 13). The United States contends that OceanConnect's allegations in the third-party complaint acknowledge as much: "As stated within the complaint, 'Ocean Connect . . . seeks assessment of civil penalties (under the citizen suit provision of the federal Clean Air Act) against third-party defendant United States for the EPA's negligent *administration* of the RINs program.'" (*Vinmar*, Docket Entry No. 49, at 3 (quoting *Vinmar*, Docket Entry No. 34, ¶ 1). Under the governing case law on the limits of § 7604(a) and related citizen-suit provisions, the United States asserts that it is "crystal clear that there's no cause of action under the citizens suit provision against the agency administering a statute." (*Vinmar*, Docket Entry No. 56, at 13). The United States's motion and reply expand on this argument. (*See generally Vinmar*, Docket Entry Nos. 43, 49).

The arguments of both parties are examined in light of the case law, the statute, and the regulations.

**C.    Analysis**

The CAA contemplates what the Sixth Circuit recently characterized as "limited . . . private enforcement of its provisions." *Sierra Club v. Korleski*, 681 F.3d 342, 344 (6th Cir. 2012). Section 7604(a)(1) allows "any person" to sue "any person . . . who is alleged to have violated . . . or to be in violation of . . . an emission standard or limitation under this chapter[.]" 42 U.S.C. § 7604(a)(1). According to the United States, "'violations' provisions, such as the subsection (a)(1) violation in the Clean Air Act, are limited to actions against regulated parties (including the federal government

where, unlike here, it *is* a regulated party) and do not permit claims arising from an administering agency's implementation of a statute." (*Vinmar*, Docket Entry No. 43, at 8). The United States cites numerous cases, including the Supreme Court's decision in *Bennett v. Spear*, 520 U.S. 154 (1997).

*Bennett* involved the proper interpretation of the citizen-suit provision of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(1). The United States Fish and Wildlife Service, under the administration of the Secretary of the Interior, had determined under the ESA that an irrigation project likely jeopardized the existence of two endangered species of fish. The Service recommended maintaining minimum water levels to avoid that risk. The plaintiffs, private parties affected by that recommendation, sued the Service's Director and the Secretary of the Interior under the ESA's citizen-suit provision. The plaintiffs alleged that, in making the determination and recommendation, the Service violated the ESA. The plaintiffs argued they could seek judicial review of these statutory violations under the ESA's citizen-suit provision. *See* 520 U.S. at 158–60.

The Supreme Court disagreed. The citizen-suit provision in the ESA stated that "any person may commence a civil suit . . . to enjoin any person . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A). The *Bennett* Court agreed with the government's argument that "the Secretary's conduct in implementing or enforcing the ESA is not a 'violation' of the ESA within the meaning of this provision." 520 U.S. at 173. The Court concluded that "§ 1540(g)(1)(A)'s reference to any 'violation' of the ESA cannot be interpreted to include the Secretary's maladministration of the ESA." *Id.* at 174. Because the plaintiffs' claim challenged the manner in which the Secretary and the Service administered the ESA, the Court held that the claim was not cognizable under § 1540(g)(1)(A). *Id.*

12

In *Sierra Club v. Korleski*, the Sixth Circuit persuasively applied *Bennett* and its reasoning to a citizen suit under § 7604(a)(1), the provision at issue in this case. The issue presented in *Korleski* was whether the plaintiffs, the Sierra Club and three individuals, could bring a claim under § 7604(a)(1) against the Director of the Ohio Environmental Protection Agency for failing to implement a federal regulation relating to Ohio's environmental-protection efforts. *See* 681 F.3d at 343. The regulation, promulgated under the CAA, required Ohio EPA's director to make a determination that air-pollution emitters were using the best available technology ("BAT") to limit emissions before giving those emitters a license to install or modify an emissions source. *Id.* at 344. According to the plaintiffs, "the Director's refusal to make a BAT determination before issuing permits to small emitters," as the regulation required, "constituted a 'violation of [] an emission standard or limitation' within the meaning of the Clean Air Act's citizen-suit provision." *Id.* at 344–45 (citing 42 U.S.C. § 7604(a)(1)). The Sixth Circuit held that § 7604(a)(1) did not authorize the suit against the Ohio EPA because "§ 7604(a)(1) is only a means by which 'parties may enforce the substantive provisions of the [CAA] *against regulated parties*[.]'" *Id.* at 351 (quoting *Bennett*, 520 U.S. at 173 (emphasis added)).

The *Korleski* court based its holding on *Bennett*. The *Korleski* court explained that "[t]he text of the ESA's citizen-suit provision is virtually identical to that of § 7604(a). . . . The enabling language of the two provisions is the same: each provision authorizes 'any person' to sue 'any person' who is alleged 'to be in violation of' certain provisions of each act." *Id.* at 346, 347. In *Bennett*, the Court reasoned that the ESA's use of the term "violation" in the contexts of imposing both civil penalties—$25,000 per violation—and criminal penalties—maximum incarceration of one year—made it "most unlikely to refer to failure by the Secretary or other federal officers and

13

employees to perform their duties in administering the EPA." *Id.* at 348 (quoting *Bennett*, 520 U.S. at 173). "The same uses of 'violation,' in the same contexts, are present" in the CAA. *Id.* at 349. In fact, the Sixth Circuit explained, the penalties under the CAA were worse: $25,000 per each day of violation (civil) and maximum incarceration of five years (criminal). *Id.* "The implications of the plaintiffs' interpretation of the term 'violation' as used in the CAA render the interpretation implausible." *Id.* This made the case against allowing suit against the agency even stronger than in *Bennett*. *See id.* The Sixth Circuit concluded:

> The text and structure of the CAA make plain that § 7604(a)(1) does not permit citizen suits against state regulators *qua* regulators. Instead, like the nearly identical ESA provision that even the United States says was "patterned after" it, § 7604(a)(1) is only a means by which "parties may enforce the substantive provisions of the [CAA] against regulated parties." *Bennett*, 520 U.S. at 173. We would reach that conclusion even without the benefit of the Supreme Court's analysis of the nearly identical provision in *Bennett*; and we are compelled to reach it here, because we have no lawful basis to distinguish that case from this one.

*Id.* at 351. *Korleski,* which involved a suit against a state regulatory agency, did not find *Bennett* materially different because the defendant in that case was the federal regulatory agency rather than a state regulatory agency. *Korleski* relied on the *Bennett* Court's interpretation of the ESA's "virtually identical" citizen-suit provision to hold that § 7604(a)(1) of the CAA only provides "a means by which 'parties may enforce the substantive provisions of the [CAA] *against regulated parties*[.]'" 681 F.3d at 346, 351 (quoting *Bennett*, 520 U.S. at 173 (emphasis added)). Section 7604(a)(1) is not a means by which parties may challenge the EPA's maladministration of the CAA. *See Bennett*, 520 U.S. at 174.

Other cases interpreting similar citizen-suit provisions reach the same conclusion. *See Benzman v. Whitman*, 523 F.3d 119, 133–34 (2d Cir. 2008) (holding that a similar provision under

Comprehensive Environmental Response, Compensation, and Liability Act does not allow a citizen suit challenging the agency's maladministration of that act); *Physicians Comm. for Responsible Med. v. Johnson*, 436 F.3d 326, 334–35 (2d Cir. 2006) (holding that a similar provision under Toxic Substances Control Act does not allow a citizen suit challenging the agency's actions as a regulator); *Cross Timbers Concerned Citizens v. Saginaw*, 991 F. Supp. 563, 567–68 (N.D. Tex. 1997) (holding that a similar provision under Clean Water Act does not allow a citizen suit challenging the EPA's maladministration of that act); *Stewart v. Potts*, 983 F. Supp. 678, 681–83 (S.D. Tex. 1997) (same).

OceanConnect attempts to distinguish both *Bennett* and *Korleski*, but does not do so persuasively. Under the established case law, § 7604(a)(1) does not authorize suit against the EPA for its alleged negligent or improper administration of the CAA. Instead, the provision only authorizes a cause of action against regulated parties who violate the substantive standards or limitations set out in the statute. OceanConnect's own pleadings make it clear that it is suing the United States for the EPA's alleged negligence in administering the CAA. The first paragraph of OceanConnect's third-party complaint alleges that it "seeks assessment of civil penalties (under the citizen suit provision of the federal Clean Air Act) against third-party defendant United States *for the EPA's negligent administration of the RINs program.*" (*Vinmar*, Docket Entry No. 34, ¶ 1 (emphasis added)). The complaint alleges the EPA's "violations" of the CAA, but these violations were the EPA's failures: (1) to confirm that the companies issuing RINs actually possessed fuel-production facilities; (2) to disclose the fraudulent RINs after the EPA knew about the fraud; and (3) to suspend the registration of the companies issuing the fraudulent RINs to stop them from continuing to trade, which would have mitigated the damages of companies such as OceanConnect. (*See id.*, ¶¶ 78–82, 216–222). Each of these "violations" arises from the EPA's acts or omissions in administering the

RINs program, which is established by CAA regulations. Each of these "violations" arises from the EPA's alleged maladministration of the CAA. Labeling the EPA's acts or omissions as "*ultra vires*" does not change the reasoning or the result.

OceanConnect's argument that the EPA's negligent administration of the CAA resulted in an increase in emissions, so as to result in a violation of an emission standard or limitation, is also unpersuasive. Many allegedly negligent steps in administering statutory requirements designed to reduce emissions logically and obviously have the potential to increase emissions. This potential or actual effect cannot be the test for whether a regulator, as opposed to a regulated entity, can be sued under § 7604(a)(1). If that were the test, virtually any claim for maladministration of the CAA could be brought under § 7604(a)(1). But that is inconsistent with the holdings in *Bennett*, *Korleski*, and the other cases that such citizen-suit provisions only authorize claims that a regulated entity, and not a regulating agency, violated an emissions standard or limitation.

The motion to dismiss the third-party complaint against the United States is granted. Because amendment of a claim under § 7604(a)(1) would be futile, leave to amend to reassert this claim is denied.

## III.  *Vitol*: The Motion to Remand

According to OceanConnect's Notice of Removal, "the only question presented by this lawsuit is whether the RINs sold by OceanConnect to Vitol are valid and/or may be used to satisfy an Obligated Parties' Renewable Volume Obligations imposed by the Clean Air Act." (*Vitol*, Docket Entry No. 1, ¶ 2). OceanConnect asserts that federal law is a "direct and essential element" of Vitol's state-law claims and that "the federal questions concerning the validity and/or use of these RINs is

the *sole* legal question raised by Vitol's claims." (*Id.*). Vitol disagrees that its lawsuit involves a federal question and has moved to remand. (*Vitol*, Docket Entry No. 12).

OceanConnect has the burden of demonstrating that a federal question exists. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). "Because removal raises significant federalism concerns, the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *Id.* (internal quotation marks omitted).

"A federal question exists 'only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27–28 (1983)) (alteration in original). "In other words, federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Id.* at 338.

According to OceanConnect, despite the fact that Vitol only pleaded state-law claims, all four requirements for federal-question removal jurisdiction are met. OceanConnect argues that: (1) resolving the validity of the transferred RINs—a federal issue because they are a creation of federal law—is necessary to the resolution of Vitol's state-law claims; (2) the issue is disputed because the parties disagree about the validity of the RINs (or, to use OceanConnect's phrase, "whether violations of the federal Clean Air Act occurred"), whether damages resulted, and who is responsible; (3) the issue is substantial because the questions surrounding the RINs' validity "pervade the entire transactions upon which Vitol's Complaint is based"; and (4) exercising federal jurisdiction will not

raise federalism concerns because "this case involves interpretation of a federal program with a national aim" that state courts do not regularly, if at all, interpret. (*Vitol*, Docket Entry No. 17, at 5–6).

Vitol argues that "there is no question, federal or otherwise, about the invalidity of the RINs that OC sold to Vitol—they are not what they purported to be." (*Vitol*, Docket Entry No. 18, at 2). To the extent that validity is in question, that would be a defense to the state-law claims Vitol has asserted against OceanConnect, which does not give rise to federal-question jurisdiction. (*Id.*, at 2–3). As Vitol argues, "[s]imply because the court that ultimately hears this dispute may have to intepret federal law does not meant that this case presents a substantial federal question." (*Id.*, at 4).

As to the first requirement for federal-question jurisdiction, it is unclear that there is any disputed federal issue necessary to resolve the state-court claims Vitol has asserted. The parties do not dispute that the EPA has found the RINs at issue invalid. And OceanConnect's own pleadings allege that the RINs at issue are invalid and fraudulent. (*E.g.*, *Vinmar*, Docket Entry No. 34, ¶¶ 23–29; Docket Entry No. 58, Ex. 2, ¶¶ 19, 39–45).

"[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005). "What [the Supreme Court's opinions in] *Grable* and *Empire Healthchoice Assurance* teach is that something more is required for a federal interest to be 'substantial' than the mere fact that the state court will be asked to follow federal standards"—that is, apply federal law—"in the context of adjudicating a state law claim." *RX.com, Inc. v. O'Quinn*, 766 F. Supp. 2d 790, 796 (S.D. Tex. 2011). In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), "the Court held that where

Congress has provided no private remedy for the violation of a federal drug regulatory statute, the fact that [a] violation of the statute is an element of a state tort claim is insufficient to establish a substantial federal interest." *Singh*, 538 F.3d at 338–39.  As in *Merrell Dow*, neither Congress nor the EPA have established a private remedy for transferring an invalid or fraudulent RIN.  That OceanConnect may have to prove in state court that the RINs were invalid under federal regulations does not establish a substantial federal interest.  To hold otherwise would mean that every case involving an allegedly invalid RIN presents a substantial federal question and triggers federal jurisdiction.  "[A] state-law claim can involve federal *subject matter* without involving a *substantial federal* issue."  *Windle v. Synthes USA Prods., LLC*, Civ. A. No. 3:11-CV-2591-D, 2012 WL 1252550, at *7 (N.D. Tex. Apr. 13, 2012).  To the extent that federal law is applicable, it is "only tangentially relevant to an element of a state [contract or warranty] claim."  *Singh*, 538 F.3d at 339.

Vitol's motion to remand is granted.  OceanConnect's pending motion to dismiss, stay, or for a more definite statement is remanded for the state court to resolve.

### III.    Conclusion and Order

This court:

1.  grants the motion to dismiss the third-party claim under § 7604(a)(1) against the United States, with prejudice and without leave to amend to reassert that statutory claim, (*Vinmar*, Docket Entry No. 43);

2.  reserves ruling on OceanConnect's motion for leave to file an amended third-party complaint, (*Vinmar*, Docket Entry No. 58);

3.  grants Vitol's motion to remand, (*Vitol*, Docket Entry No. 12); and

4.  denies as moot OceanConnect's motion to dismiss, to stay the proceedings, or for a more definite statement, (*Vitol*, Docket Entry No. 2).

The *Vitol* action, No. 11-4629, is severed and remanded to the 157th Judicial District Court of Harris County, Texas. The court will enter separate orders of severance in this action, and of remand in *Vitol*.

SIGNED on August 20, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge