## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| VINMAR OVERSEAS, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-4311 |
| | § | |
| OCEANCONNECT, LLC, | § | |
| | § | |
| Defendant and | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| -against- | § | |
| | § | |
| CLEAN GREEN FUELS, LLC, | § | |
| RODNEY R. HAILEY, ABSOLUTE | § | |
| FUELS, LLC, JEFFREY DAVID | § | |
| GUNSELMAN, GREEN DIESEL, | § | |
| LLC, UNITED STATES OF | § | |
| AMERICA, by and through the U.S. | § | |
| ENVIRONMENTAL PROTECTION | § | |
| AGENCY, and LISA P. JACKSON, | § | |
| in her official capacity as | § | |
| Administrator of the U.S. | § | |
| Environmental Protection Agency, | § | |
| | § | |
| Third-Party Defendants. | § | |

### MEMORANDUM AND ORDER

The present dispute arises from lawsuits filed by Vinmar Overseas, Ltd. ("Vinmar") and Vitol Inc. ("Vitol")[1] against OceanConnect, LLC ("OceanConnect") over tradable credits for renewable-fuel production. OceanConnect filed a third-party complaint impleading, among other entities, the United States Environmental Protection Agency ("EPA"), which this court dismissed for lack of subject-matter jurisdiction as to the claims against the United States. (Docket Entry No.

---

[1] Vitol's suit (Civ. A. No. 11-4629) was consolidated with Vinmar's suit (Civ. A. No. 11-4311), but Vitol's claims were later severed and remanded to state court. (Docket Entry No. 61–62).

61). In the pending motion, OceanConnect seeks leave to file a first amended third-party complaint to assert state-law negligence claims against the United States arising from the EPA's allegedly negligent administration and enforcement of the renewable-fuel regulatory program under the Clean Air Act ("CAA"). (*See* Docket Entry No. 58, Ex. 2, 1st Am. Compl.). The United States filed a response, (Docket Entry No. 70), to which OceanConnect replied, (Docket Entry No. 71).

Based on the record, including the proposed amended pleading; the motion, response, and reply; the arguments of counsel; and the relevant law, this court denies OceanConnect's motion for leave to file its first amended third-party complaint. The reasons for this ruling are set out below.

**I.    Background**

The regulatory and procedural backdrop for this lawsuit was set out in a prior opinion. (*See generally* Docket Entry No. 61). Only a brief summary is needed here. Under the CAA regulations, producers and importers of conventional gasoline and diesel fuel are "obligated parties" who must satisfy renewable-fuel volume obligations. They may do so by purchasing "Renewable Identification Numbers" ("RINs") that demonstrate the production of renewable fuel. 42 U.S.C. § 7545(*o*); 40 C.F.R. § 80.1427. Producers of qualifying renewable fuel generate RINs to represent the volume and type of renewable fuel they have produced. RINs are initially sold together with the qualifying fuel, but may be separated from the fuel under certain circumstances and traded in a secondary market. 40 C.F.R. §§ 80.1428(b), 80.1429(b). By acquiring and retiring an appropriate number of the different RIN types, an obligated party can comply with its renewable-fuel volume obligations. *Id.*, § 80.1427. Before generating RINs, a renewable-fuel producer must register with EPA by submitting certain information. *Id.*, § 80.1450. All regulated parties are subject to recordkeeping and reporting requirements related to their RIN activities. *Id.*, § 80.1450, 80.1454.

It is unlawful for producers of renewable fuel to generate and transfer a RIN without actually producing renewable fuel. *Id.*, § 80.1460(b)(1)–(2). RINs that do not represent physical volumes of renewable fuel are invalid. Obligated parties cannot use invalid RINs to meet their renewable-fuel volume obligations, even if that party acquired the RINs with a good-faith belief that they were valid. *Id.*, §§ 80.1431(a)(1)(vi), (b)(2), 80.1460(c)(1). It is also a violation of the CAA for anyone to transfer an invalid RIN or to cause another person to transfer an invalid RIN. *Id.*, § 80.1460(b)(2), (e).

OceanConnect, Vinmar, and Vitol are engaged in the secondary market for RINs. (Docket Entry No. 58, Ex. 2, ¶¶ 36–37). Between 2009 and 2011, OceanConnect purchased RINs from Clean Green Fuels, LLC, Absolute Fuels, LLC, and Green Diesel, LLC (the "Impleaded Companies"). (*Id.*, ¶¶ 39, 65, 81–82). OceanConnect sold some of these RINs to Vinmar, Vitol, and other third parties. (*Id.*, ¶¶ 49, 75, 91). The EPA determined that the RINs generated and sold to OceanConnect by the Impleaded Companies are invalid. (*Id.*, ¶¶ 54, 77, 93). In the underlying action, Vinmar and Vitol sued OceanConnect for breach of contract based on their purchase of invalid RINs from OceanConnect. (Docket Entry No. 1). The suit was filed in Texas state court and subsequently removed to federal court. (*Id.*)

In response to the plaintiffs' suit, OceanConnect filed a third-party action against the United States and the Impleaded Companies. (Docket Entry No. 34). The third-party claim against the United States was brought under the citizen-suit provision of the CAA, 42 U.S.C. § 7604(a)(1), for the EPA's "negligent administration" of the CAA. (Docket Entry No. 34, ¶¶ 78–82, 215–22). In general, OceanConnect asserted that the EPA's maladministration of the CAA violated the renewable-fuel regulations by causing regulated parties to "transfer apparently invalid RINs in the

3

RINs marketplace." (*Id.*, ¶ 217). OceanConnect alleged that the United States violated emissions standards by negligently allowing fraudulent companies to enter the RINs marketplace, which in turn "has had the effect of allowing excessive greenhouse emissions to enter the atmosphere in violation of federal law and regulations." (*Id.*) OceanConnect asked this court to impose "appropriate civil penalties for each emission standard and/or limitation violation with respect to the estimated 120 million RINs at issue," (*id.*, at 36), which OceanConnect alleged was in the millions of dollars, (*id.*, ¶ 222).

The United States filed a motion to dismiss for lack of subject-matter jurisdiction based on Federal Rule of Civil Procedure 12(b)(1). (Docket Entry No. 43). Before this court ruled on the motion to dismiss, OceanConnect filed the present motion, seeking leave to file an amended third-party complaint to assert claims against the United States under the FTCA. (Docket Entry No. 58). In addition to the § 7604(a)(1) claim previously asserted, the proposed amended complaint includes FTCA claims for violating the Texas Clean Air Act, TEX. HEALTH & SAFETY CODE ANN. § 382.085 (West 2010), and for negligence under Texas law. (Docket Entry No. 58, Ex. 2, ¶¶ 226–33). OceanConnect based its state-law negligence claims on allegations that were virtually identical to those in its earlier-filed citizen-suit third-party complaint. (*Compare* Docket Entry No. 34, ¶¶ 11, 13–21, 78–80, 219–22, *with* Docket Entry No. 58, Ex. 2, ¶¶ 17–18, 21–22, 27–37, 226–35).[2] The citizen-suit complaint, for example, alleged that the EPA violated the CAA by "negligently registering certain companies as renewable fuels producers without confirming that such companies actually possessed manufacturing facilities to produce renewable fuels; and . . . once it became evident that these companies did not have such facilities in place . . . fail[ing] to suspend the

---

[2] The Texas Clean Air Act claim is also based on the maladministration allegations. (Docket Entry No. 58, Ex. 2, ¶ 226–29).

registration of these companies to stop them from continuing to trade RINs." (Docket Entry No. 34, ¶ 79). The proposed amended third-party complaint alleges that the "United States owed a legal duty to OceanConnect, an active participant in the RIN market that was required to purchase RINs only from EPA registered fuel producers pursuant to federal regulations, to exercise due diligence to properly register as renewable fuel producers only those companies that possessed the manufacturing facilities to actually produce renewable fuel." (Docket Entry No. 58, Ex. 2, ¶ 21). By breaching this duty, the EPA "caused millions of fraudulent RINs (possibly as many as 140 million) to permeate and infect the RINs market place, which has damaged OceanConnect's reputation and financial position." (*Id.*, ¶ 19).

On August 20, 2012, this court issued a memorandum and order addressing only OceanConnect's third-party claim under § 7604(a)(1). OceanConnect's motion for leave to amend to sue the United States under the FTCA was not yet ripe for decision. (Docket Entry No. 61). This court dismissed the § 7604(a)(1) third-party action against the United States for lack of subject-matter jurisdiction because § 7604(a)(1) "does not authorize suit against the EPA for its alleged negligent or improper administration of the CAA." (*Id.* at 15).[3]

OceanConnect relies on Rule 14(a) of the Federal Rules of Civil Procedure to bring its proposed third-party suit against the United States under the FTCA.

## II. Impleader under Rule 14

Federal Rule of Civil Procedure 14(a)(1) provides that "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." A defending party may implead a nonparty without leave of the

---

[3] The court also granted Vitol's motion to remand, (Docket Entry No. 12), and severed and remanded its claims to state court, (Docket Entries No. 61–62).

court by filing a third-party complaint less than 14 days after serving its original answer. If more time has passed, the defending party must obtain the court's leave. FED. R. CIV. P. 14(a)(1).

District courts have "'wide discretion in determining whether to permit such third party procedure.'" *Briones v. Smith Dairy Queens, Ltd.*, 2008 WL 4200931, at *2 (S.D. Tex. Sept. 9, 2008) (quoting *McDonald v. Union Carbide Corp.*, 734 F.2d 182, 183 (5th Cir. 1984)). "The factors applied when deciding whether to allow a third-party complaint include prejudice placed on the other parties, undue delay by the third-party plaintiff, lack of substance to the third-party claim, and advancing the purposes of Rule 14 (such as avoiding duplicative suits on closely related issues)." *Id.* (citing 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1443, at 300–11 (2d ed. 1990)).

The court's discretion may be exercised only when the proposed third-party claim is within the scope of impleader established by Rule 14(a). 6 WRIGHT & MILLER, § 1443, at 355 (3d ed. 2010). "[A] third-party complaint is not proper under Rule 14 if the defendant cannot show a basis for the third-party defendant's liability to the defendant." *ADC Rig Servs., Inc. v. JPMorgan Chase Bank, N.A.*, 2009 WL 1011151, at *2 (S.D. Tex. Apr. 15, 2009) (alteration in original) (quoting *McCain v. Clearview Dodge Sales, Inc.*, 574 F.2d 848, 849–50 (5th Cir. 1978)). Rule 14(a) "exists to bring in third parties who are *derivatively* liable to the impleading party." *Hassan v. La. Dep't of Transp. & Dev.*, 1999 WL 642861, at *2 (5th Cir. July 26, 1999) (emphasis in original); *see also Briones*, 2008 WL 4200931, at *2 ("Such complaints require that the 'defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff.'" (quoting *Anadarko Petrol. Corp. v. Great Plains Gas Compression, Inc.*, 2007 WL 38327, at *1 (S.D. Tex. Jan. 4, 2007))). "The mere fact that the alleged third-party claim arises from the same

transaction or set of facts as the original claim is not enough." 6 WRIGHT & MILLER § 1446, at 432–34 (3d ed. 2010). The issue in this case is whether OceanConnect's proposed third-party complaint against the United States, based on the FTCA and the underlying Texas statutory and common-law claims, is within Rule 14(a)'s scope.

## III.   Analysis

OceanConnect argues that if it is found liable to Vinmar for breach of the contract to provide valid RINs, then the United States will be liable to OceanConnect for negligently enabling the creation of invalid RINs and their entry into the secondary marketplace. As explained below, this third-party claim is not within Rule 14 because this claim is not based on any derivative liability of the United States.

"'The secondary or derivative liability notion is central'" to impleader. *Martco Ltd. P'ship v. Bruks Inc.*, 430 F. App'x 332, 334 (5th Cir. 2011) (per curiam) (quoting 6 WRIGHT & MILLER § 1446, at 415–21 (3d ed. 2010)); *see also Hassan*, 1999 WL 642861, at *2; *Briones*, 2008 WL 4200931, at *2; *Martin v. Lafon Nursing Facility of the Holy Family, Inc.*, 2007 WL 4163678, at *2 (E.D. La. Nov. 20, 2007) ("Impleader is . . . only permitted in those cases in which a third party is derivatively or secondarily liable to the defendant, i.e., "the third party's liability [is] in some way derivative of the outcome of the main claim." (quoting *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967))). "Such derivative liability includes claims for indemnity, contribution, and subrogation." *Martin*, 2007 WL 4163678, at *2 (citing *McCain*, 574 F.2d at 850); *see also Martco*, 430 F. App'x at 334 ("[I]mpleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory.'" (quoting 6 WRIGHT & MILLER § 1446, at 415–21 (3d ed. 2010))). "Impleader

7

is proper 'only when the third-party defendant's potential liability is *dependent* upon the outcome of the main claim.'" *Sunrise Dev., Inc. v. Carl E. Woodward, Inc.*, 2004 WL 574719, at *2 (E.D. La. Mar. 22, 2004) (emphasis added) (quoting *Se. Mortg. Co. v. Mullins*, 514 F.2d 747, 749 (5th Cir. 1975)). "[A]n entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim." *Joe Grasso*, 380 F.2d at 751; *see also Sunrise Dev.*, 2004 WL 574719, at *2.

Even assuming that the RINs Vinmar acquired from OceanConnect were invalid as alleged, and even assuming that the invalidity was in part caused by the EPA's negligence in administering the RINs regulatory program, the connection between the Vinmar claims and the OceanConnect third-party claims against the United States ends there. OceanConnect's FTCA claim is not derivative of, or secondary to, Vinmar's claim. OceanConnect's claim is that the United States is primarily liable for all of OceanConnect's damages arising from the invalid RINs it purchased. The fact that OceanConnect later sold some of those RINs to Vinmar does not create any liability that the United States may have to OceanConnect.

OceanConnect's claim is not limited to the RINs that Vinmar purchased. OceanConnect's claim against the United States concerns the EPA's administration generally, potentially affecting *all* invalid RINs. The damages OceanConnect seeks are not limited to the damages sought by Vinmar for the alleged breach of contract; they cover OceanConnect's overall exposure to invalid RINs in the secondary marketplace.

OceanConnect argues that the United States's liability for the EPA's negligent maladministration depends on the outcome of Vinmar's breach of contract claim against OceanConnect. The argument is based on a combination of "but-for" reasoning and

8

OceanConnect's plan to use any damages recovered from the United States to satisfy any liability owing to Vinmar. OceanConnect argues that "[b]ut for the United States' negligent and exclusive registration of certain fuel producers, who possessed no manufacturing facilities and the Federal Government's failure to warn of same, neither Vinmar nor OceanConnect would have acquired the allegedly invalid RINs and sold them to others." (Docket Entry No. 71, at 3). If OceanConnect is "liable to Vinmar and the Government liable to OceanConnect, OceanConnect will satisfy its liability to Vinmar with monies recovered from the United States." (*Id.* at 2). These points are unpersuasive, either singly or combined. "The suggestion that a separate and independent claim can be made the proper subject of a third party complaint because, but for the violation of duty alleged the main claim would not have matured, has been rejected by this and other courts." *Mullins*, 514 F.2d at 750; *see also Cambridge Strategies, LLC v. Cook*, 2012 WL 176587, at *7 (N.D. Tex. Jan. 23, 2012) ("The essence of the third party claims is that, but for the tortious conduct of Group Affiliates, Sockwell, and Garcia, Cook could have performed his responsibilities under the contracts at issue, and Defendants would not be liable to Cambridge Strategies for the claims asserted. This argument, however, has been rejected in this circuit." (citing *Mullins*, 514 F.2d at 750)).

Impleader "does not require an identity of claims, or even that the claims rest on the same theory." *Am Fid. & Cas. Co. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956). But impleader does require that "the liability of the third-party defendant be dependent on the liability of the third-party plaintiff." *Fischbach v. Capital One Bank (USA), N.A.*, 2011 WL 71207, at *3 (D. Minn. Jan. 7, 2011) (citing FED. R. CIV. P. 14(a); *Jeub v. B/G Foods, Inc.*, 2 F.R.D. 238, 240 (D. Minn. 1942)); *see also Briones*, 2008 WL 4200931, at *2; *U.S. v. Sensient Colors, Inc.*, 2009 WL 394317, at *11 (D.N.J. Feb. 13, 2009); *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805

(6th Cir. 2008) (" [A] third-party complaint must be founded on a third party's actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant. . . . The third-party complaint is in the nature of an indemnity or contribution claim." (citations omitted)).

Even if the United States is ultimately found liable to OceanConnect for the fact that the RINs available on the secondary market included invalid RINs, some of which OceanConnect purchased, that liability does not depend on the outcome of the breach of contract claim Vinmar asserted against OceanConnect. Instead, the only connection besides the "but-for" argument — which is inadequate for Rule 14(a) — is that OceanConnect plans to use any damages it collects from the United States to pay any damages it might owe Vinmar. Neither the alleged "but-for" link nor the payment plan renders OceanConnect's claim against the United States "in the nature of a contribution or indemnity claim." *Am. Zurich*, 512 F.3d at 805; *see also Autotronic Sys., Inc. v. HRSG, Inc.*, 2008 WL 8053985, at *1 (S.D. Tex. Mar. 4, 2008) (ruling that the fact that a defendant's failure to pay the plaintiff was caused by the third-party defendant's failure to pay the defendant did not create dependent liability); *Wells Fargo Bank, N.A. v. Pettus*, 2011 WL 3586405, at *3 (N.D. Tex. Aug. 16, 2011) (finding no dependence where the plaintiff alleged that, had a third party not breached its contract with defendant, the defendant would not have breached its contract with the plaintiff). In *Autotronic* and *Pettus*, "B had a breach of contract claim against C that existed independently of the claim between A and B. In *Pettus*, for example, the court noted that 'the nexus with the principal action is not that it establishes the right to relief, but merely the *need* for relief.'" *NuVasive, Inc. v. Renaissance Surgical Center N., L.P.*, 853 F. Supp. 2d 654, 665 (S.D. Tex. 2012) (emphasis in original) (quoting 2011 WL 3586405, at *3 (quoting *Mullins*, 514 F.2d at 750 (internal

quotation marks omitted))). Here, a successful breach of contract action against OceanConnect does not establish OceanConnect's right to relief against the United States.

OceanConnect argues that, if liable for breach of contract, it is equitably subrogated to claims that Vinmar could assert against the United States. OceanConnect argues that the Fifth Circuit recognized subrogation as a valid basis for impleader as recently as in *Martco*, 430 F. App'x at 334. *Martco* does not change the general principal that impleader claims must sound in derivative liability. Even if Vinmar had negligence claims against the EPA, and even if OceanConnect could argue that it was subrogated to any negligence claims Vinmar might assert against the United States, these negligence claims do not derive from the breach of contract claims Vinmar asserts against OceanConnect in this case.

OceanConnect argued in the alternative that it is statutorily subrogated to negligence claims Vinmar could assert against the United States. OceanConnect has cited no authority for a statutory right to subrogation other than the statutory and regulatory provisions concerning the EPA's duties under the RINs program. OceanConnect argues that "[t]he statutory right to subrogation arises from the Clean Air Act's proscriptions that no person . . . shall cause another person to transfer invalid RINs" and "'[a]ny person who causes another person to fail to meet a requirement of any provision . . . is liable for causing a violation of that provision.'" (Docket Entry No. 71, at 11 (alterations in original) (citing 40 C.F.R. § 80.1161(a)(2), (b)(2))). But nothing in the provisions OceanConnect cites could fairly be construed as creating a right to subrogation.

Essentially, OceanConnect argues that Vinmar could assert the same broad maladministration claims against the EPA for the entire RINs-enforcement scheme that

11

OceanConnect seeks to assert under the FTCA. Vinmar has not attempted to do so in this case. Impleader under Rule 14(a) does not permit OceanConnect to do so.

In addition to OceanConnect's inability to show that impleader is proper under Rule 14(a), the balance of factors a court considers in determining whether to allow a third-party complaint weigh against granting the motion for leave to amend. *See Briones*, 2008 WL 4200931, at *2. As to the first and second factors, the record indicates neither that the United States or Vinmar will be especially prejudiced by impleader,[4] nor that OceanConnect unduly delayed attempting to implead the United States. And the court recognizes that OceanConnect may be prejudiced if it is forced to litigate its claims against the United States in a separate lawsuit. (*See* Docket Entry No. 71, at 13–14). But the third and fourth factors weigh heavily against impleader. The substance of OceanConnect's proposed FTCA claim against the United States and the link to the breach of contract claim Vinmar asserts against OceanConnect are tenuous. This court cannot conclude on the basis of the record that allowing the negligence-based claims against the United States to proceed in this suit would help adjudicate strong claims or serve the purposes of Rule 14.

In the alternative, OceanConnect asks this court to "sever OceanConnect's First Amended Third-Party Complaint and permit it to proceed separately before your Honor as per Rule 14(a)(4)." (Docket Entry No. 71, at 14 n.8). Rule 14(a)(4) provides that "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." The problem is that there is no valid third-party

---

[4] OceanConnect suggests that the United States waived any prejudice arguments because it did not object to the original third-party complaint on Rule 14 grounds. (Docket Entry No. 71, at 13). This argument is unpersuasive. Because this court determined it lacked subject-matter jurisdiction over the original third-party claims against the United States, (*see* Docket Entry No. 61), this court would have lacked jurisdiction to entertain a challenge to impleader under Rule 14. Nevertheless, the United States has not asserted that it would incur more legal expenses or that it would be otherwise disadvantaged by defending in this suit rather than in a separate lawsuit. Accordingly, prejudice to the United States weighs neither for nor against impleader.

claim against the United States to sever and try separately.  Rule 14(a) does not permit OceanConnect to file its proposed third-party FTCA claims against the United States in this case. Given that OceanConnect's attempt to amend its third-party complaint was unsuccessful, allowing further leave to attempt to assert a third-party claim against the United States in this case would be futile.  The motion for leave to file the first amended third-party complaint is denied, with prejudice.

**IV.     Conclusion**

OceanConnect's motion for leave to file its first amended third-party complaint is denied.

SIGNED on November 29, 2012, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge